IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRENDA YOSELIN ROJANO
GONZALEZ,

        **Petitioner,**

v.

GEORGE STERLING, Field Office
Director of ICE Atlanta Field Office;
TODD LYONS, in his official
capacity as Acting Director of
Immigration and Customs
Enforcement; KRISTI NOEM,
Secretary of Homeland Security;
PAMELA BONDI, U.S. Attorney
General; and MARCO RUBIO, in his
official capacity as U.S. Secretary of
State,

        **Respondents.**

CIVIL ACTION FILE

NO. 1:25-CV-6080-MHC

## ORDER

Petitioner Brenda Yoselin Rojano Gonzalez has filed a petition for writ of

habeas corpus challenging her detention by U.S. Immigration & Customs

Enforcement ("ICE"). Verified Pet. For Writ of Habeas Corpus and Compl. for

Declaratory and Injunctive Relief ("Pet.") [Doc. 1]. Petitioner alleges that ICE is

unlawfully detaining her without conducting a bond hearing in violation of the

Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C. § 1101 et seq., and in contravention of the Fifth Amendment and the Administrative Procedure Act, 5 U.S.C. § 706(2). Id. ¶¶ 4-7.

On October 24, 2025, this Court entered an Order directing Petitioner to effect service on Respondents as soon as practicable, establishing a briefing schedule in response to Petitioner's Motion for Temporary Restraining Order and Preliminary Injunctive Relief and Request for an Immediate Hearing ("Mot. for TRO") [Doc. 3], and restraining Respondents "from removing Petitioner from the Northern District of Georgia until further order from this Court." Oct. 24, 2025, Order [Doc. 6]. This case comes before the Court on Petitioner's Motion for TRO and Respondents' Motion for Reconsideration of the Court's Order Restraining Respondents from Removing Petitioner from the Northern District of Georgia ("Mot. for Recons.") [Doc. 11].

## I.    BACKGROUND

Petitioner is a 25-year-old citizen of Mexico who has resided in the United States since approximately September 2013, over twelve (12) years ago, when she entered through the southern border without inspection or authorization. Pet. ¶ 25. At the time of her detention, Petitioner resided in Fayette County, Georgia, with her husband (who she married in 2021), and her two children ages 2 and 4, all of

whom are U.S. citizens. Id. ¶ 33. Petitioner began the process of becoming a lawful permanent resident four years ago, in 2021. Id. ¶ 34. Petitioner's husband filed a Form I-130, Petition for Alien Relative, which was approved, as was her Form I-601A provisional waiver application. Id. She is currently awaiting the final step in obtaining her immigrant visa, which is the scheduling of her immigrant visa interview. Id.

Petitioner alleges she was arrested by Fayette County, Georgia, police for a traffic violation on October 23, 2025, subsequently detained by ICE, and then transferred to ICE offices at 180 Ted Turner Drive SW, Atlanta, Georgia. Id. ¶ 36. Petitioner alleges that ICE is unlawfully detaining her pursuant to 8 U.S.C. § 1225(b)(2) without the benefit of a bond hearing pursuant to 8 U.S.C. § 1226(a).[1] Id. ¶¶ 4-6, 40-41, 44; Decl. of Karen Weinstock (Oct. 30, 2025) ("Weinstock Decl.") [Doc. 16-3] ¶ 4 ("Petitioner was apprehended in the interior of the United States, not at a border or port of entry, and is being detained under 8 U.S.C.

---

[1] As explained below, this is relevant because aliens detained pursuant to § 1225(b)(2) generally must remain in custody throughout any removal proceedings. See Jennings v. Rodriguez, 583 U.S. 281, 297 (2018) ("[Sections] 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded."). In contrast, aliens detained pursuant to 8 U.S.C. § 1226(a) can seek release pending a final order on their removal proceeding. 8 C.F.R. § 1236.1(d)(1).

§ 1225(b) as an "arriving alien" or "applicant for admission."). Petitioner does not allege that she has requested a bond hearing, but states that "[b]ecause all Respondents continue to treat Petitioner as detained under § 1225(b), any request for bond redetermination before an Immigration Judge would be futile, as the Immigration Court has already disclaimed jurisdiction over such requests." Id. ¶ 41; see also id. ¶ 92 ("[I]t would be futile for Petitioner to seek an immigration bond hearing at this stage.").

In her Motion for TRO, Petitioner seeks a Court order that, among other things, (1) restrains Respondents from transferring her outside this Court's jurisdiction, (2) orders her immediate release from custody, or, alternatively arranges for a bond hearing, and (3) enjoins Respondents from re-detaining her during the pendency of these proceedings.[2] Mot. for TRO at 9-10.

---

[2] Petitioner also sought an expedited hearing on her Motion for TRO but, in her reply brief, she suggests that an immediate hearing is no longer necessary given the expedited briefing which has been filed. Pet'r's Reply to Resp.'ts' Resp. to Mot. for TRO ("Pet'r's Reply") [Doc. 16] at 49. Petitioner also seeks an Order compelling Respondents to adjudicate her I-130 Petition. Mot. for TRO at 10.

## II.    LEGAL STANDARD

### A.    Motion for TRO

In order to obtain a temporary restraining order or preliminary injunction, Petitioners must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the injunction is not granted; (3) that the threatened injury to Petitioners absent an injunction outweighs the damage to Respondents if an injunction is granted; and (4) that granting the injunction would not be adverse to the public interest.  Four Seasons Hotels & Resorts v. Consorcio Barr, 320 F.3d 1205, 1210 (11th Cir. 2003); Morgan Stanley BW, Inc. v. Frisby, 163 F. Supp. 2d 1371, 1374 (N.D. Ga. 2001).  A temporary restraining order is "an extraordinary and drastic remedy" and should be granted only when the movant clearly carries the burden of persuasion as to each of the four prerequisites.  Id.

### B.    Motion for Reconsideration

"The Court does not reconsider its orders as a matter of routine practice." Belmont Holdings Corp. v. SunTrust Banks, Inc., 896 F. Supp. 2d 1210, 1223 (N.D. Ga. 2012) (citing LR 7.2E, NDGa.).  Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but only when "absolutely necessary."  LR 7.2E, NDGa.  Such absolute necessity arises only when there is "(1) newly discovered evidence; (2) an intervening

development or change in controlling law; or (3) a need to correct a clear error of law or fact." Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003) (citation omitted).  A motion for reconsideration may not be used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." Id. at 1259.  Nor may it be used "to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." Adler v. Wallace Comput. Servs., Inc., 202 F.R.D. 666, 675 (N.D. Ga. 2001).  Finally, "[a] motion for reconsideration is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).  "If a party presents a motion for reconsideration under any of these circumstances, the motion must be denied." Bryan, 246 F. Supp. 2d at 1259; see also Brogdon ex rel. Cline v. Nat'l Healthcare Corp., 103 F. Supp. 1322, 1338 (N.D. Ga. 2000).

## III.    DISCUSSION – MOTION FOR TRO

### A.    Jurisdiction

Respondents argue that this Court lacks jurisdiction to hear Petitioner's challenge of her detention because 8 U.S.C. § 1252(e)(3) "bars this court from conducting 'judicial review of determinations under section 1225(b) of this title and its implementation.'"  Resp'ts' Resp. in Opp'n to Pet'r's Mot. for TRO and Prelim. Injunctive Relief and Req. for Immediate Hr'g ("Resp'ts' Opp'n") [Doc. 13] at 9-10 (quoting 8 U.S.C. § 1252(e)(3)).

The Court finds that 8 U.S.C. § 1252(e)(3) is inapplicable to this case because it concerns challenges to the validity of a "system," and Petitioner does not raise any systemic challenges.  Section 1252(e)(3) is entitled "Challenges on Validity of the System" and provides that

> Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of--
> > (i) whether such section, or any regulation issued to implement such section, is constitutional; or
> > (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A). Here, Petitioner does not challenge the lawfulness of any particular statute, regulation, or written policy or procedure. See Pet'r's Reply at 41 ("Petitioner is not challenging the validity of the entire § 1225(b)(2) detention "system" or any regulation or written policy as such. Rather, Petitioner challenges the legality and constitutionality of her own detention as applied to her unique circumstances.").

Accordingly, § 1252(e)(3)(A) does not strip this Court of jurisdiction over Petitioner's claims. See Mata Velasquez v. Kurzdorfer, No. 25-CV-493-LJV, 2025 WL 1953796, at *6-7 (W.D.N.Y. July 16, 2025) (finding that § 1252(e)(3) narrowly applies to systemic challenges of the "statutory framework" of § 1225(b), not "constitutional or statutory claims which precede and are collateral to that process, including . . . unlawful arrest or detention."); Agarwal v. Lynch, 610 F. Supp. 3d 990, 1005-06 (E.D. Mich. 2022) (finding that § 1252(e)(3) was not a jurisdictional bar to a habeas action where the petitioner did not assert a systemic challenge to the expedited removal statute). Petitioner does not challenge the detention process under § 1225(b) but instead asserts that her detention is unconstitutional and not subject to the strictures of that provision.[3]

---

[3] Respondents' reliance on Patel v. Barr, 475 F. Supp. 3d 422 (E.D. Pa. 2020), is inapposite because the plaintiffs in that case, who were ordered removed, sought to challenge the validity of 8 C.F.R. § 208.13(c)(4) which they contended was part of

More importantly, the Court need not decide whether Petitioner's claim is aimed at the system process under § 1225(b) because, as shown below, the mandatory detention provisions of § 1225(b) do not apply at all. As detailed below in Section III(B). the Court rejects Respondents' argument that § 1225(b)(2) authorizes it to detain Petitioner without a bond hearing and concludes instead that Petitioner's detention is governed by the discretionary authority in 8 U.S.C. § 1226(a). Because § 1225(b)(2)(A) does not govern the detention of individuals in Petitioner's position in the first place, she is not seeking judicial review of the "implementation" of § 1225(b).

**B.    Likelihood of Success on the Merits**

Petitioner argues that her detention without a bond hearing violates 8 U.S.C. § 1226(a) while Respondents contend that she is subject to 8 U.S.C. § 1225(b)(2) and therefore can be detained without bond.

**1.    The Statutory Framework for the Detention of Noncitizens Under the INA.**

Two sections of the INA govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. §§ 1225 and 1226. <u>Puga v. Assistant Field Office Dir.,</u>

---

an " 'unlawful effort' to undermine the United States asylum system at the southern border." <u>Id.</u> at 424.

Krome N. Serv. Processing Ctr., No. 25-24535-CIV-ALTONAGA, 2025 WL

2938369, at *3 (S.D. Fla. Oct. 15, 2025) ("Under the INA, sections 1225 and 1226

govern the detention of noncitizens before a final order of removal.").  Section

1225 prescribes mandatory detention provisions, while Section 1226 permits

discretionary detentions.

Section 1225 governs noncitizen "applicants for admission" who are

"present in the United States," but have "not been admitted."[4]  8 U.S.C.

§§ 1225(a)(1); Puga, 2025 WL 2938369, at *3.  Except for a narrow exception "for

urgent humanitarian reasons or significant public benefit," 8 U.S.C.

§ 1182(d)(5)(A), which is not present here, "detention under § 1225(b)(2) is

considered mandatory," and "[i]ndividuals detained under § 1225 are not entitled

to a bond hearing."  Lopez Benitez v. Francis, No. 25 Civ. 5937 (DEH), 2025 WL

2371588, at *3 (S.D.N.Y. Aug. 13, 2025); see also 8 U.S.C. § 1225(b)(2) ("[I]n the

case of an alien who is an applicant for admission, if the examining immigration

officer determines that an alien seeking admission is not clearly and beyond a

doubt entitled to be admitted, the alien *shall* be detained."); Jennings v. Rodriguez,

---

[4] In the immigration context, the term "admission" means "the lawful entry of [an]
alien into the United States after inspection and authorization by an immigration
officer." 8 U.S.C. § 1101(a)(13)(A).

583 U.S. 281, 300 (2018) ("That express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released.").

While Section 1225 governs noncitizens who have not yet been admitted into the country, Section 1226 governs "aliens already in the country." Jennings, 583 U.S. at 289 (citing 8 U.S.C. § 1226); see also id. at 303 ("§ 1226 applies to aliens already present in the United States.").

> Section 1226(a) sets out the default rule [for the detention of aliens already inside the United States]: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.' [8 U.S.C.] § 1226(a). . . . [T]he Attorney General 'may release' an alien detained under § 1226(a) 'on . . . bond" or 'conditional parole.'"

Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1226(a)).  As such, "Section 1226(a) establishes a discretionary detention framework for noncitizens who are 'arrested and detained' . . . ." Gomes v. Hyde, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *1 (D. Mass. July 7, 2025).

Given that detention under § 1225(b)(2) is essentially mandatory and detention under § 1226(a) is discretionary, it follows that whichever statute Petitioner is subject to is dispositive as to whether Respondents can lawfully detain her without providing her a bond hearing.  In other words, if Petitioner was detained as a noncitizen "seeking admission" to the country under § 1225(b)(2) (as

Respondents argue), her detention would be mandatory.  If, instead, she was

detained as a noncitizen "already in the country" under § 1226(a) (as Petitioner

argues), then her detention is discretionary and she would be, at a minimum,

entitled to a detention determination by an immigration official and an appeal of

that decision before an immigration judge.  8 C.F.R. §§ 1236.1(c)(8), (d)(1).

### 2.    Petitioner is Not Subject to Mandatory Detention Under § 1225(b)(2).

Respondents contend that "Petitioner is subject to mandatory detention

without bond under the plain language of 8 U.S.C. § 1225(b)(2)."  Resp'ts' Opp'n

at 11-18.  Respondents rely heavily on a Board of Immigration Appeals ("BIA")

interpretation of the statute in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA

2025), a decision that— deviating from longstanding practice[5]—endorsed

detentions pursuant to § 1225(b) rather than § 1226(a).  Section 1225 defines an

"applicant for admission" as "[a]n alien present in the United States who has not

been admitted or who arrives in the United States (whether or not at a designated

port of arrival . . . .)."  8 U.S.C. § 1225(a)(1).  Respondents argue that "seeking

admission" and "appl[ying] for admission," are "plainly synonymous" and,

---

[5] See Hurtado, 29 I&N Dec. 216 n.6. ("We acknowledge that for years Immigration Judges have conducted [§ 1226(a)] bond hearings for aliens who entered the United States without inspection.")

therefore, "a person 'seeking admission' is just another way of saying someone is applying for admission—that is, she is an 'applicant for admission'—which includes both those individuals arriving in the United States and those already present without admission." Resp'ts' Opp'n at 13.

Respondents also rely on Pena v. Hyde, No. 25-11983, 2025 WL 2108913 (D. Mass. July 28, 2025), as an example of a case where the court found an alien who was unlawfully in the U.S. for twenty (20) years to be an "applicant for admission." Id. at 13. Pena is distinguishable from the present case. In Pena, the petitioner did not appear to raise the applicability § 1226 (indeed, that statute is not mentioned in the case) and instead relied on an approved I-130 petition to support his adjustment of status. Pena, 2025 WL 2108913 at *2.

Respondents' argument that § 1225(b)(2)(A) applies to all noncitizens living in the U.S. who did not lawfully enter, regardless of how long they have lived here or whether they ever took any affirmative step to seek admission, is without merit because it (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) renders a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice.

### a.    Plain language

> The starting point for statutory interpretation is the language of the statute. The "cardinal canon" of statutory interpretation is that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. If the language of the statute is clear and unambiguous, we will go no further and will employ that plain meaning. . . . When a statute does not define a term, the plain meaning of the text controls unless the language is ambiguous or leads to absurd results.

United States v. Dawson, 64 F.4th 1227, 1236 (11th Cir. 2023), cert. denied, 144 S. Ct. 343 (2023) (internal quotation marks and citations omitted). "[W]e look to the plain and ordinary meaning of the statutory language as it was understood at the time the law was enacted. And one of the ways to figure out that meaning is by looking at dictionaries in existence around the time of enactment." Id. (internal quotation marks and citations omitted).

Respondents' interpretation ignores the plain meaning of the phrase "seeking admission." "[T]he phrase 'seeking admission' is undefined in the statute but necessarily implies some sort of present-tense action." Martinez v. Hyde, No. 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025). "Seeking" means "asking for" or "trying to acquire or gain" and implies some kind of affirmative action on the part of the actor. Lepe v. Andrews, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *5 (E.D. Cal. Sept. 23, 2025) (citing Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking). The

statute defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101. "And 'entry' has long been understood to mean 'a crossing into the territorial limits of the United States.'" Lepe, 2025 WL 2716910, at *5 (quoting Hing Sum v. Holder, 602 F.3d 1092, 1100–01 (9th Cir. 2010)). "To piece this together, the phrase 'seeking admission' means that one must be actively 'seeking' 'lawful entry.'" Id. (quoting Lopez Benitez, 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025)). The phrase "implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection." Lopez-Campos v. Raycraft, No. 2:25-CV-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025).

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [Petitioner], because [s]he has already been residing in the United States for several years.

Lopez Benitez, 2025 WL 2371588, at *7.  Under the plain meaning of the statute,

Petitioner cannot be said to have been actively seeking lawful entry into the U.S. as

it is undisputed that she entered this country in 2013.

> Noncitizens who are just "present" in the country – . . . who have been
> here for years upon years and never proceeded to obtain any form of
> citizenship (e.g. asylum, permanent residency, refugee status, visas,
> etc.) – are not "seeking" admission.  True, they may technically be "a
> noncitizen present in the United States who has not been admitted" to
> make them an "applicant for admission" but these are not
> interchangeable.  The statute also requires that an "examining
> immigration officer" determine that the noncitizen is "seeking
> admission."  That was not and could not have been done under the facts
> and circumstances of this case.

Raycraft, 2:25-CV-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025).

### b.    Context of statutory scheme

Respondents' argument also is inconsistent with the context of §§ 1225 and

1226 in the broader statutory framework of the INA.

> The plainness or ambiguity of statutory language is determined not only
> by reference to the language itself, but as well by the specific context
> in which that language is used, and the broader context of the statute as
> a whole.  Under the canon of *noscitur a sociis*, a word is known by the
> company it keeps.  Put differently, *noscitur a sociis* counsels that a
> word is given more precise content by the neighboring words with
> which it is associated.

Dawson, 64 F.4th at 1237 (internal punctuation and citations omitted).

> Although the Supreme Court's decision in Jennings did not directly
> address the interplay between § 1225(b)(2)(A) and § 1226, Jennings'
> description of the statutory provisions is largely consistent with [the

16

petitioner's] argument.  The Court explained that § 1225 is part of the immigration process "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible," and that the statute "authorizes the Government to detain certain aliens seeking admission into the country."  Jennings, 583 U.S. at 287, 289.  By contrast, the Court noted that § 1226 "authorizes the Government to detain certain aliens already in the country."  Id. at 289.

Guerrero Orellana v. Moniz, No. 25-CV-12664-PBS, 2025 WL 2809996, at *8 (D.

Mass. Oct. 3, 2025) (citations omitted).

Applying well-accepted principles of statutory construction, and considering

the statutory framework of the INA as a whole, this Court finds that § 1225 applies

to noncitizens encountered as they are attempting to enter the United States or

shortly after they gained entry without inspection or authorization.  Section 1225

repeatedly refers to aliens entering the country and not already present in the

United States.  See, e.g., 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens

"arriving in the United States"); id. § 1225(b)(2)(C) (aliens "arriving on land...from

a foreign territory contiguous to the United States" may be returned to that territory

pending removal proceedings); id. § 1225(d)(1) (immigration officers authorized to

inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which

they believe aliens are being brought into the United States").

### c.    Canon against statutory surplusage

"Courts must give effect to every clause and every word of a statute, so that no clause or word is superfluous, void, or insignificant." Dawson, 64 F.4th at 1236. In this case, if the Court were to adopt Respondents' interpretation of § 1225(b)(2), it would render superfluous part of Congress's recent amendment to § 1226(c) in the Laken Riley Act. See Martinez, No. 2025 WL 2084238, at *7 ("[S]ection 1225(b)(2) cannot be read to mandate detention of non-citizens already present within the United States, based on certain inadmissibility grounds, as that would nullify a recent amendment to the immigration statutes.").

> Section 1226 generally implements a discretionary scheme for non-citizen detention but carves out certain disfavored non-citizens whom the Government is required to detain. One such carve-out, added only months ago by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), mandates detention for non-citizens who meet certain criminal and inadmissibility criteria. But if, as the Government argued in Gomes and again now, a non-citizen's inadmissibility were alone already sufficient to mandate detention under section 1225(b)(2)(A), then the 2025 amendment would have no effect. This is a presumptively dubious result. The canon against surplusage is strongest when an interpretation, such as this one, would render superfluous another part of the same statutory scheme. This tension between sections 1225 and 1226 motivates the conclusion that they apply to different classes of aliens.

Martinez, No. 2025 WL 2084238, at *7 ("Indeed, as the Attorney General has previously decided, "'section [1225] (under which detention is mandatory) and section [1226] (under which detention is permissive) can be reconciled only if they

18

apply to different classes of aliens.'") (quoting <u>Matter of M-S-</u>, 27 I. & N. Dec. 509, 516 (Att'y Gen. 2019)).

Under Respondents' expansive and illogical interpretation of § 1225, the Laken Riley Act Amendment would serve no purpose and "there would have been no need for Congress to specify in Section 1226(c)(1)(E) that such citizens are subject to mandatory detention when they are present in the United States without being admitted or paroled and when they satisfy the separate criminal conduct criterion." <u>Sampiao v. Hyde</u>, No. 1:25-CV-11981-JEK, 2025 WL 2607924, at *8 (D. Mass. Sept. 9, 2025). "Such an interpretation, which would nullify the criminal conduct provision of a statute Congress enacted this very year, must be rejected." <u>Id.</u>

### d.    Prior usage and interpretation

Section 1226(a) has been applied previously to noncitizens, like Petitioner, who entered the country without admission or authorization and were present for years. <u>See Hurtado</u>, 29 I. & N. Dec. 216, 229 n.6 (BIA 2025) ("We acknowledge that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection."); <u>see also Lopez Benitez</u>, 2025 WL 2371588, at *8 ("Respondents' novel position would expand § 1225(b) far beyond how it has been enforced historically, potentially subjecting millions more

undocumented immigrants to mandatory detention, while simultaneously

narrowing § 1226(a) such that it would have extremely limited (if any)

application.").

> By contrast, decades of practice reflect "DHS's longstanding interpretation" of § 1226(a) as "appl[ying] to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Martinez, —— F. Supp. 3d at ——, 2025 WL 2084238, at *7 (citing Transcript of Oral Argument 44:24–45:2, Biden v. Texas, 597 U.S. 785 (2022) (No. 21-954)).  As the Martinez court concluded, "[t]he line historically drawn between" sections 1225 and 1226, which "mak[es] sense of their text and the overall statutory scheme, is that section 1225 governs detention of non-citizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country.'"  Id. at ——, 2025 WL 2084238, at *8 (citing Jennings, 583 U.S. at 288-89); see Rodriguez v. Bostock, 779 F. Supp. 3d 1239, 1256-1262 (W.D. Wash. 2025) (finding that a noncitizen apprehended within the United States and charged with inadmissibility was necessarily detained under section 1226, rather than 1225); Gomes, 2025 WL 1869299, at *5-8 (same).  The Martinez court noted that this conclusion was further supported by "three recent, albeit unpublished, decisions by the Board of Immigration Appeals ("BIA"), all clearly holding that the detention of a non-citizen arrested within the United States is governed under section 1226, rather than section 1225." —— F. Supp. 3d ——, 2025 WL 2084238, at *8 (citing Rodriguez, 779 F. Supp. 3d at 1248–49).  Indeed, in one case, the BIA "stated that it was 'unaware of any precedent' that would support Respondents' position here."  Id.  This Court has similarly been unable to identify any authority to support Respondents' expansive interpretation of § 1225(b).

Id.

In this case, the government's longstanding practice under which § 1226(a)

would have applied to Petitioner is consistent with the plain language of the text

and the statutory scheme.  Accordingly, the Court finds that Petitioner has shown a

substantial likelihood of success on the merits of her claim that she is not subject to

Section 1225(b)(2)(A) and that Respondents' application of that statute to her is

unlawful.  Moreover, Petitioner has shown a substantial likelihood of success on

the merits of her contention that the failure of Respondents to apply § 1226(a)'s

discretionary detention scheme is unconstitutional because she is being detained

without the opportunity to challenge her continued detention at a bond hearing.

### C.    Irreparable Harm

Petitioner alleges that her unlawful confinement is depriving her of her

liberty, which constitutes irreparable harm.  Mem. of Authorities in Supp. of

Pet'r's Emergency Mot. for TRO ("Pet'r's Br.") [Doc. 3-1] at 11-12.  Respondents

do not address this element, instead stating that when a movant is "unable to

establish a likelihood of success on the merits, a court need not consider the

remaining conditions prerequisite to injunctive relief."  Resp'ts' Opp'n at 9.

Based upon the undisputed allegations of her Petition, Petitioner has been in

the United States for twelve (12) years, and resides with her husband and two

minor children, all of whom are U.S. citizens.  There is no evidence that she has

been convicted of any crimes or that she is a risk of flight or a danger to the

community.  Presumably, under these circumstances, she would likely be

considered a strong candidate for release on bond. So, based on the facts and circumstances presented in this case, protracted civil detention clearly threatens irreparable harm to Petitioner. See S.D.B.B. v. Johnson, No. 1:25-CV-882, 2025 WL 2845170, at *10 (M.D.N.C. Oct. 7, 2025) ("During his time detained, Petitioner is separated from his wife and family . . . This loss of liberty in the absence of a TRO would constitute irreparable harm.").

**D.    Balance of Equities and Public Interest[6]**

Petitioner argues that the irreparable harm she suffers from continued detention outweighs any potential harm to the government. Pet'r's Br. at 11-12. The Court finds that Petitioner's interest in receiving a bond hearing is significant. Although Respondents have not addressed this factor, the Court acknowledges that Respondents have a considerable interest in controlling the presence of aliens in this country. However, a TRO in Petitioner's favor would merely prevent Respondents from applying Section 1225(b) in an unlawful manner to Petitioner. See Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *23 (D. Nev. Sept. 17, 2025) ("And because the Court has found it is likely that

---

[6] "[W]here the government is the party opposing the preliminary injunction, its interest and harm merge with the public interest." Swain v. Junior, 958 F.3d 1081, 1091 (11th Cir. 2020).

Respondents are unlawfully detaining Petitioner under § 1225(b)(2), "neither

equity or the public interest are furthered" by allowing Respondents' violation of

the INA to continue—quite the opposite.").

Accordingly, the Court **GRANTS** Petitioner's Motion for a TRO as

provided below.

## IV.   DISCUSSION – MOTION TO RECONSIDER

Respondents move for reconsideration of this Court's October 24, 2025,

Order in which the Court restrained Respondents "from removing Petitioner from

the Northern District of Georgia until further order from this Court." Oct. 24,

2025, Order at 3.  Respondents argue that the Court's Order was erroneous because

this Court lacks jurisdiction to enjoin a transfer of Petitioner outside the Northern

District under 8 U.S.C. § 1252(a)(2)(B)(ii).  Mot. to Recons. at 4-5.  Respondents

further argue that because "DHS has discretion to determine the appropriate place

of detention for non-citizens pending removal or a decision on removal, this Court

should find that it lacks jurisdiction to enjoin ICE from transferring Petitioner out

of this district." Id. at 5 (citing 8 U.S.C. § 1231(g)(1)).  The statute which

Respondents rely upon for the proposition that DHS has discretion to determine the

appropriate place of detention, 8 U.S.C. § 1231(g)(1), provides in relevant part that

"[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1).

Section 1252(a)(2)(B) provides in relevant part that "no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252 (a)(2)(B).  The Supreme Court has emphasized that § 1252 (a)(2)(B)(ii)'s bar on jurisdiction applies only to those decisions where Congress has expressly "set out the Attorney General's discretionary authority in the statute." Kucana v. Holder, 558 U.S. 233, 243 n.10 (2010) ("§ 1252(a)(2)(B)(ii), speaks of authority "specified"—not merely assumed or contemplated—to be in the Attorney General's discretion.").  In other words, judicial review is barred "only when Congress itself set[s] out the Attorney General's discretionary authority in the statute." Id. at 247.  Courts have held that

> when a statute authorizes the Attorney General to make a determination, but lacks additional language specifically rendering that determination to be within his discretion (e.g., "in the discretion of the Attorney General," "to the satisfaction of the Attorney General," etc.), the decision is not one that is "specified . . . to be in the discretion of the Attorney General" for purposes of § 1252(a)(2)(B)(ii).

Nethagani v. Mukasey, 532 F.3d 150, 154-55 (2d Cir. 2008).

Section 1231(g) has no such specific language rendering the Attorney

General's determination with regard to deciding the appropriate places of detention

for aliens detained pending removal to be discretionary.  It merely states that "[t]he

Attorney General shall arrange for appropriate places of detention for aliens

detained pending removal or a decision on removal."  8 U.S.C. § 1231(g)(1).  Far

from specifying discretion, § 1231(g) uses the obligatory "shall" rather than a

permissive "may."

> More fundamentally, however, the language of § 1231(g) does not
> address transfers at all, nor does it explicitly grant the Attorney General
> or the Secretary of Homeland Security discretion with respect to
> transfers.  Indeed, § 1231(g) appears to relate more centrally to the
> government's brick and mortar obligations for obtaining facilities in
> which to detain aliens. It provides that the Attorney General "shall
> arrange for appropriate places of detention for aliens detained pending
> removal or decision on removal" and, when such facilities "are
> unavailable," authorizes the Attorney General to "expend" from
> specified appropriations "amounts necessary to acquire land and to
> acquire, build, remodel, repair, and operate facilities (including living
> quarters for immigration officers if not otherwise available) necessary
> for detention." 8 U.S.C. § 1231(g)(1).

Reyna as next friend of J.F.G. v. Hott, 921 F.3d 204, 209-10 (4th Cir. 2019)

(holding that § 1252(a)(2)(B)(ii) does not strip courts of jurisdiction to review

transfer decisions; even if the discretionary authority to transfer a detainee between

facilities is contemplated under § 1231(g), such authority is merely implied);

Aguilar v. U.S. Immigration & Customs Enf't Div. of Dep't of Homeland Sec., 510

F.3d 1, 20 (1st Cir. 2007) ("[S]ection 1231(g) fails to "specify" that individualized

transfer decisions are in the Attorney General's discretion.")

Accordingly, the Court finds that § 1252(a)(2)(B)(ii), by operation of

§ 1231(g), does not deprive this Court of jurisdiction to order ICE to keep

Petitioner in the Northern District of Georgia pending further order of this Court.[7]

Accordingly, Respondents' Motion to Reconsider is **DENIED**.

## V.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Petitioner Brenda

Yoselin Rojano Gonzalez's Motion for Temporary Restraining Order [Doc. 3] is

**GRANTED** as follows:

Respondents are hereby **ENJOINED** from continuing to detain Petitioner

unless they provide her with an individualized bond hearing before an immigration

judge pursuant to 8 U.S.C. § 1226(a) as soon as possible, but no later than three (3)

days from the date of this Order.

---

[7] Respondents complain that Petitioner is being held at the Floyd County Jail in Rome, Georgia, where detention is limited, and they seek to transfer her to a facility outside this district. Mot. to Recons. at 6. Nothing in this Order mandates that Petitioner must be held at the Floyd County Jail. Respondents can move her to another facility within this District. Since Respondents do not contend in their response that Petitioner is a flight risk or a danger to the public (and only defend her detention based on an interpretation of § 1225(b) which this Court now has rejected), they could also exercise discretion and release her instanter.

If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, it is further **ORDERED** that Petitioner must be released from detention no later than on the fourth day after the entry of this Order.

Respondents are further **ENJOINED** from pursuing detention of Petitioner on the basis of 8 U.S.C. § 1225(b)(2)(A), which is inapplicable in this case, and she is instead subject to detention, if at all, pursuant to the discretionary provisions of 8 U.S.C. § 1226(a)(1).

**IT IS FURTHER ORDERED** that Respondents shall file a Status Report with this Court within no later than 12:00 P.M. on the fourth day after the entry of this Order to certify compliance with this Order. The Status Report shall include the date the bond hearing occurred, if bond was granted or denied, and, if denied, the reasons for that denial. If the Status Report reflects that the bond hearing has not occurred within the time constraints in this Order, the Status Report must advise the Court of the date and time of Petitioner's release from detention.

**IT IS FURTHER ORDERED** that, in the event Petitioner is released on bond, Respondents are **ENJOINED** from rearresting Petitioner, unless she has committed a new violation of any federal, state, or local law, or has failed to attend any properly noticed immigration or court hearing or is subject to detention pursuant to a final order of removal.

**IT IS FURTHER ORDERED** that this Order does not affect the preliminary relief that was granted in the Court's October 24, 2025, Order [Doc. 6] to preserve this Court's jurisdiction. Respondents remain **ENJOINED** from removing Petitioner from the Northern District of Georgia until further Order from this Court. Respondents' Motion for Reconsideration of the Court's Order Restraining Respondents from Removing Petitioner from the Northern District of Georgia [Doc. 11] is **DENIED**.

It is further **ORDERED** that Respondents shall show cause in writing no later than seven (7) days from the date of this Order as to why the Court should not issue a preliminary injunction in this case. Petitioner may file a response no later than seven (7) days after Respondent's filing. A hearing on whether a preliminary injunction should issue is set for November 20, 2025, at 10:00 a.m. in Courtroom 1905, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia.

**IT IS SO ORDERED** this 3rd day of November, 2025.

MARK H. COHEN
United States District Judge